## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **P.W., AN INDIVIDUAL WITH A DISABILITY, AND J.W. AND A.W. PARENTS/GUARDIANS/NEXT FRIENDS OF P.W.** | § § § § § | |
| *Plaintiffs,* | § § | |
| **V.** | § § | **Case No. 1:21-cv-722** |
| | § | **Jury Trial Demanded** |
| **LEANDER INDEPENDENT SCHOOL DISTRICT** | § § | |
| *Defendant.* | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND APPEAL

Come now J.W. and A.W., on behalf of themselves and as parents/guardians/next friends of P.W., a minor student with disabilities ("Plaintiffs" or "Plaintiff parents" or "P.W.") and bring this Original Complaint and Appeal against Defendant Leander Independent School District ("Defendant LISD" or "Leander") and states as follows:

## INTRODUCTION

1.      At the time of the hearing, P.W. was in fourth grade at the Rawson Saunders School (Rawson Saunders), a private school for children with dyslexia and related disorders located in Austin, Texas. Her parents were paying for Rawson Saunders. P.W. had been enrolled in Leander ISD, at Reagan Elementary from the time she was in kindergarten in the 2016-17 school year until she withdrew from the district. Her final days of attendance at LISD were during the first few weeks of the 2020-21 school year and thereafter, she enrolled in Rawson Saunders.

2.      Leander ISD discriminated against Plaintiffs because of P.W.'s disability and because of her parents' vigorous advocacy for her.

3.     This case is brought pursuant to the Americans with Disabilities Act as Amended, 42 U.S.C. §§12101 et seq., Title II ("ADA") and Section 504 of the 1974 Rehabilitation Act, 29 U.S.C. §794 ("§504") and all related regulations. It is also an appeal after an administrative hearing held pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et seq., ("IDEA") and Texas law.

4.     At issue is a remedy for Plaintiffs for Leander ISD's failure to comply with IDEA and its eventual "force out" of P.W. from the District in response to Defendant's failure to offer appropriate educational services and in response to Plaintiff parents' advocacy for P.W.

5.     There is no dispute that P.W. is protected by the ADA/504 and the IDEA. After years of struggles in math and reading, and multiple requests of her parents for help, P.W. was at long last evaluated and found eligible for special education and related services as a student with ADHD (Other Health Impairment or OHI). She also should have been qualified for special education and related services under Specific Learning Disability (SLD) and Emotional Disturbance (ED) but was not.

6.     Leander ISD has not recognized P.W. as a student with ADHD, learning disabilities, an emotional disturbance and dyslexia consistent with the ADA and §504 for several years.

## JURISDICTION AND VENUE

7.     This case is an original action pursuant to the ADAAA, 42 U.S.C. §12101, et seq., (ADA) and Section 504, 29 U.S.C. §794 (§504) and all related regulations. Both the ADAAA and Section 504 are federal statutes over which this Court has original jurisdiction. 28 U.S.C. §1331.

8.     This lawsuit follows administrative exhaustion through the TEA decision known as TEA

Docket No. 209-SE-0220; *P.W. b/n/f Autumn W. and James W. v. Leander Independent School District* issued July 19, 2021. Exh. 1 ("Decision"). On February 28, 2020, the Plaintiffs requested the TEA administrative hearing.

9.      The Plaintiffs did not remove P.W. from Leander ISD until September 2020, after it was clear that the February 2020 IEP was deficient and did not meet P.W.'s educational needs.

10.     Due to unforeseen delays (including counsel illness on each side), the TEA hearing did not occur until April 20-22, 2021.

11.     Portions of the Decision were in P.W.'s favor, as noted in an email from a Texas Education Agency official charged with ensuring that Leander ISD complies with the hearing officer's decision and orders. Exh. 2.  However, other portions of the Decision are completely contrary to the preponderance of the evidence submitted to the hearing officer.

12.     In addition, and on information and belief, based on training and instruction by the TEA, despite finding violations by Leander ISD, the SEHO provided P.W. with wholly inadequate remedies for the egregious violations of law that occurred.

13.     Plaintiffs are aggrieved by some portions of the SEHO's Decision, but also prevailed on some portions of the SEHO's Decision entitling them to attorneys' fees. This Court has subject-matter jurisdiction pursuant to the IDEA as well. 20 U.S.C. §§1400 et seq; 20 U.S.C. §1415.

14.     Venue in this Court is proper under 28 U.S.C. §1391(b).

## THE PARTIES

15.     P.W. and her parents, J. W. and A.W., are the Plaintiffs. P.W. is the student. At all times material to this action, Plaintiffs' legal residence was within Leander ISD boundaries. The family requested its IDEA special education hearing on February 28, 2020 after receiving a completely

deficient IEP from Leander ISD on or about February 2020. The parents removed P.W. from Leander ISD in September 2020 but continued to reside in the Leander ISD at all times thereafter. The family paid its school district taxes to Leander ISD but were further burdened by having to pay thousands of dollars to educate P.W. at Rawson-Saunders, a private school for children with dyslexia and related needs. They also bore the difficulty and costs of privately transporting P.W. to Rawson-Saunders.

16.     P.W. is a qualified individual with a disability protected by the ADAAA (Title II) and Section 504 whom Leander ISD has failed to fully recognize and properly serve under Section 504. P.W. has undisputed medical health issues, ADHD, dyslexia and learning disabilities. Each of these disabilities impacts major life activities, including learning and concentrating. Reference to P.W. is used to protect the minor's privacy consistent with Fed. R. Civ. Proc. 5. The full identity of the Plaintiffs is known to LISD but can be fully revealed to the Court at a later date, if necessary.

17.     Leander Independent School District is the Defendant. Defendant LISD is a public school district in the State of Texas. Defendant LISD is a local educational agency under the IDEA. Defendant LISD receives IDEA and other federal funding and also funding from the State of Texas. Defendant LISD is obligated to fully comply with the IDEA, ADAAA (Title II)/Section 504 and all related federal regulations, Texas Education Code Chapter 29 and the Texas education commissioner's rules.

### RELATIONSHIP OF IDEA, ADAAA/Title II and SECTION 504 CLAIMS

18.     Leander ISD deprived P.W. of a free appropriate public education ("FAPE") pursuant to the IDEA. Leander ISD also engaged in discriminatory conduct contrary to the ADA and §504. In *Fry v. Napoleon*, 137 S. Ct. 743 (2017), the Supreme Court explained that if a student

4

sought a remedy that "could be" resolved at an IDEA administrative hearing, they were required to exhaust the claim before an IDEA hearing officer. The IDEA at 20 U.S.C. §1415(l) does not permit wholesale "elimination" of these claims as occurred in this case; rather, it only requires that P.W. *exhaust* them before bringing them to this Court:

> (l) Rule of Construction. Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, [42 U.S.C. 12101], title V of the Rehabilitation Act of 1973 [29 U.S.C. 790] or other Federal laws protecting the rights of children with disabilities, except that before filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

19.     Plaintiffs exhausted through the arbitrary and capricious hearing as proved by the SEHO Decision. Exh. 1.

20.     In the hearing request, Plaintiffs duly "sought" to obtain a remedy under the ADA/§504, as well as the IDEA. At Leander ISD's request, the SEHO summarily dismissed the ADA/§504 claims for lack of jurisdiction. This effectively completely and totally eliminated the ADA/§504 claims at the administrative level. This type of dismissal without any careful thought, any briefing or any attempt to ensure justice is routine and commonplace before TEA hearing officers. On information and belief, TEA hearing officers have been trained by the Texas Education Agency or other training resources to dismiss all discrimination claims of any kind.

21.     The ADA was passed to provide a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities and to provide clear and strong enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. §12101(b). Congress recognized in the passage of the ADA that discrimination took place in educational settings. Disabilities in no way diminish a person's right to fully participate in all

aspects of society, and yet individuals with disabilities continually encounter discrimination including both outright exclusion and relegation to lesser services, programs or activities. 42 U.S.C. §12101(a)(1), (3), (5). This leaves disabled persons, as a group, severely disadvantaged educationally and economically.

22.     Section 504 protects qualified individuals so that they are not denied the benefits of, or subjected to discrimination. 29 U.S.C. §749(a).

23.     Plaintiffs specifically allege that P.W. is a qualified individual with a disability pursuant to physical and mental disabilities. P.W. was of age for school in Leander ISD when she was attending there. She was entitled to receive an education that was adequate or comparable or equivalent to the educational benefit enjoyed by her non-disabled peers. P.W. did not receive that education. Leander ISD failed to recognize all of P.W.'s needs as a qualified individual with disabilities and failed to provide her a program designed to provide her a free appropriate public education through regular or special education.

24.     The Americans with Disabilities Act as Amended and Section 504 recognize the disabilities suffered by P.W. as qualifying disabilities. A disability under the ADA/§504 includes an impairment that substantially limits one or more major life activity of an individual. 42 U.S.C. §12102(1)(a). Major life activities include learning, reading, concentrating, thinking and breathing. An impairment need substantially limit only one major life activity to be considered a disability. An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. Unlike the IDEA, the ADAA/504 do not condition eligibility on need.

25.   Plaintiffs allege that Leander ISD has acted in bad faith and gross misjudgment while

preserving their view that ADA/§ 504 claims do not require an allegation of bad faith or gross misjudgment or intent. *Alexander v. Choate*, 469 U.S. 287, 295-297 (1985) recognized that discrimination against the handicapped was most often the product not of invidious animus but rather of thoughtlessness and benign neglect. Mark C. Weber, "Accidentally on Purpose: Intent in Disability Discrimination Law," 56 B.C.L.Rev.1417 (2015).

## P.W.'s EDUCATIONAL EXPERIENCE IN LEANDER ISD

### A.    Leander ISD's violation of its affirmative Child Find duty

26.    Leander ISD failed its affirmative duty of Child Find required by the IDEA. P.W. attended Ronald Reagan Elementary, a Leander ISD school that had previously been judicially found to have violated Child Find. *Lisa M. v. Leander ISD*, 924 F.3d 205, *208 (5th Cir. 2019) (finding that Leander ISD and staff at Ronald Reagan Elementary wrongly revoked eligibility for a second-grade student with ADHD and Developmental Coordination Disorder (DCD).

27.    The Fifth Circuit has held repeatedly that the use of informal regular education interventions, RTI (Response to Intervention) and 504/Dyslexia services cannot substitute for special education and cannot be used to delay initial special education evaluation or services. Leander ISD, not the parents had the affirmative Child Find duty to give the parents information about special education evaluation and parent rights pursuant to the IDEA and Texas special education rules. Leader ISD deliberately withheld, refused or delayed providing that information.

28.    Significant to the question of the adequacy and comprehensiveness of the district's RTI and general education interventions is the fact that they are not built from a foundation of a formal evaluation. Staff reported that students do not receive an FIE before being placed in the various RTI programs even though they knew or should have known that RTI is not to be used as a substitute for special education.

29.     Leander ISD staff, despite the *Lisa M.* case apparently either still lacked training sufficient to know what to look for to constitute suspicion that P.W. might have a disability, which would trigger a special education evaluation or alternatively deliberately ignored that information. Steve Crawford, the Ronald Reagan principal at the time of the *Lisa M.* case, again had a starring role in this matter where he deliberately talked the mother out of her written request for a special education evaluation and never informed her of her parental rights before doing so.

**B.     P.W.'s long journey to special education eligibility at Reagan Elementary School.**

**Kindergarten (2016-2017)**

30.     In kindergarten during the 2016-2017 school year, P.W.'s teacher specifically reported on her report card that P.W. was writing in "reversal place value" in a "hit or miss" fashion. The teacher made an additional note to continue to "keep an eye" on her letter reversals. The SEHO's findings of fact ignores this information. Exh. 1, Par. 2.

31.     The parent and the kindergarten teacher discussed P.W.'s difficulties. For example, her kindergarten teacher was unsure of the difference between the terms Specific Learning Disability and specific disability. In her 17 years of teaching, the kindergarten teacher said she had never referred a child for a special education evaluation due to a suspected Specific Learning Disability. The kindergarten teacher also did not know whether dyslexia was recognized as a Specific Learning Disability. She also did not know the percentage of the population with dyslexia. LISD staff wholly failed to make a referral for evaluation during her kindergarten year.

**First Grade (2017-2018)**

32.     The 2017-2018 school year was P.W.'s first grade year. Without telling her parents about special education, LISD placed P.W. into a Response to Intervention (RTI) program at the beginning of first grade. The parents were not provided any information about special education

so that they could ask or learn about it. There is no dispute that P.W. was consistently reversing letters and numbers in kindergarten and was behind her peers in first grade. Despite being in RTI, P.W. did not meet her End of Year (EOY) fluency or decoding reading goals in first grade, but LISD's written "action to be taken" was "continue same intervention." Exh. 1, Par. 3-4.

33.    On November 14, 2017, the fall of her first grade year, P.W.'s parents made a written request for the District to perform a special education evaluation. Steve Crawford, the Ronald Reagan Principal dissuaded the parent from following through with the special education evaluation. Prior to doing so, he did not provide the parent with any notice of procedural safeguards as required by both the IDEA and Texas law.

34.    During the hearing, the District produced a document that was purportedly a "notice" purportedly created in 2017 around the time Crawford discouraged the parent. Crawford denied creating the document. No one testified with certainty as to the date or manner of its creation. The document stated that the District did not feel P.W. needed to be evaluated for special education at the time. The District's notice was completely devoid of any Notice of Procedural Safeguards so that the parents could know their rights to object in a more formal way.

35.    By the end of her first-grade year, the District clearly suspected P.W. might have dyslexia. The District did not refer her for any formal evaluations and deliberately did not tell her parents about their special education rights. Instead, during first grade, P.W. was also placed in RTI for math because she showed academic weakness in several areas. Exh. 1, Par. 4. P.W.'s 1st and 2nd grade teacher knew that P.W. was performing below grade level. The teacher had two students in RTI, including PW, for PW's 1st and 2nd grade years, which means P.W. was one of the two lowest performers for those grades. The teacher was not sufficiently trained on recognizing

the signs of dyslexia. Ultimately, LISD made no referral for special education evaluation in PW's first grade year.

36.    The SEHO erroneously excused the LISD's failure to provide P.W.'s parents with Prior Written Notice and a Notice of Procedural Safeguards at any time during her first-grade year, the 2017-2018 school year (from August 2017 through May 2018).

37.    LISD failed to provide the parents with specific notice of their rights about the RTI process during 2017-2018.

38.    The parents could not have known what their rights were during the 2017-2018 first grade year; Steve Crawford, school principal withheld the information and then deliberately talked the parent out of her **written** request for a special education evaluation. The parents were not given notice of their rights and a consent form as required by Texas special education law before they were talked out of the special education evaluation.

39.    The SEHO completely erred in refusing to recognize an exception to the one-year statute of limitations because the parents were not provided their rights in November of 2017.

**Second Grade (2018-2019)**

40.    The SEHO next jaded the administrative record by "finding" that the parents had been provided a Notice of Procedural Safeguards for the child's sibling **an entire year later – on August 27, 2018**. This finding is against the weight of the evidence. Not a single person employed by Leander ISD testified to providing the document. Even if provided, a Notice of Procedural Safeguards provided in August of 2018 could not rectify a failure to provide the Notice of Procedural Safeguards to the parents almost a year previously in November of 2017. Exh. 1, Par. 7; Exh. 1, Pg. 16. The SEHO ignored the obvious – the parents retracted the 2017 evaluation request because they were not aware of their rights – they were not provided a Notice of Procedural

Safeguards in 2017. Missing the forest for the trees, the SEHO noted that the parents received a NOPS a year later as if somehow that cured the failure in first grade. It did not.

41.     Just prior to her second-grade year, the Plaintiff parents asked again for help; this time they used the phrase "dyslexia" evaluation because a school employee told them to do so. LISD claims it provided the parents with a copy of rights pursuant to Section 504 for the first time, although this was the second request for evaluation. Once again, the SEHO excused Leander ISD's violations; this time, he noted that the parents had received a copy of the Section 504 rights suggesting that somehow the parents would know their special education rights simply because they received a copy of their Section 504 rights. This was completely wrong as a matter of law and an arbitrary effort to protect the LISD from a second blatant violation. Exh. 1, pg. 16-17.

42.     There is no dispute that the parents were wholly without their Notice of Special Education Procedural Safeguards for P.W. until the 2019-2020 school year; **therefore, they could not have known that there was an option between special education evaluations and Section 504 services for her. No informed consent for RTI occurred. Lacking informed consent, the LISD illegally placed P.W. into RTI and Section 504 for TWO years.**

43.     During her second-grade year, 2018-2019, LISD determined P.W. eligible for Section 504 because she had dyslexia and created a Section 504 plan to serve her through dyslexia services.

44.     The LISD never told the parents in 2018 that P.W. had the right to be evaluated for special education and educated through special education instead assigning her to generic Dyslexia classes that were not individually designed to meet her needs.

45.     On information and belief, Leander ISD prefers and recommends that children in the district who experience dyslexia are not to be identified through special education.

46.     On information and belief, the Leander ISD has previously been advised to discontinue placing children with dyslexia and other learning disabilities in RTI and 504 programs without affording their parents informed consent by the United States Department of Education. LISD continues to violate the law and here, the SEHO condoned this continued behavior.

**Third Grade (2019-2020)**

47.     In the fall of 2019, P.W. entered third grade still performing below grade-level Despite having been in RTI since first grade.

48.     Once again, this time on September 20, 2019, Plaintiff parents again requested P.W. be evaluated for special education and related services. Exh. 1, Par. 14. Consent for a special education evaluation was obtained on October 10, 2019. Only at this point, in October of 2019 and only after P.W.'s eligibility for special education was being discussed, did the parents finally receive a special education Notice of Procedural Safeguards for P.W.

49.     Still, after completing the evaluation on January 8, 2020, LISD staff incorrectly informed the parents that a student with dyslexia could never qualify for special education and related services. Exh. 1, Par. 15. Determined to not qualify the student, LISD then mislead the parents by telling them that P.W. did not qualify as a student with a specific learning disability. The SEHO absolved the LISD from this wrongful behavior reasoning that because the Leander ISD finally qualified P.W. as of February 2020, the misleading did not delay the parents from asking for a due process hearing. Apparently, a month's delay of misleading is permissible.

50.     Incredibly, Leander ISD has apparently taught its educators that it is wrong or bad or inappropriate to identify a child with dyslexia as a child who qualifies for special education and related services under the IDEA. Exh. 1, Par. 18, 19. Instead, the parents were told to get a

"doctor's statement" so that P.W. could be identified as having ADHD and therefore qualify for special education as having an "other health impairment." Exh. 1, Par. 19.

51.     Rather than actually evaluate P.W. for assistive technology, the school Multidisciplinary team simply decided she did not need AT because her "teachers did not feel" she required AT. Exh. 1, Par. 21.

52.     LISD violated Child Find as to P.W. for years, placing her in non-special education "interventions" from 1st – 3rd grade – even though the parent kept asking for evaluation. LISD violated its affirmative Child Find duty by proposing a special education evaluation and or by simply saying yes to a years-long campaign by parents "to figure out what the problem was," LISD waited until late 2019 to supply the Plaintiff parents their first consent form for evaluation.

53.     Leander ISD specifically conceded in writing – at least twice – that the hodgepodge conglomeration of Tier One, Tier Two and Three RTI, general education and 504 interventions that P.W. received for kindergarten, first, second and most of third grade were not successful.

54.     About a year after putting a Section 504 plan into place, LISD's 10-10-19 Notice and Consent to Evaluate for Special Education states that special education evaluation was needed because *"Student is not making adequate progress" and "Previous interventions have not yielded adequate success."* (JE 21-2). At hearing staff said they did not know why PW was kept on the same 504 plan since 2018 even though LISD's own documents state she had a lack of adequate progress.  Rather than teaching her to read, the 504 plan instead required P.W. to have oral administration in *all* classroom activities, tests, reading, writing, math, science, social studies and specials. Nowhere in her 504 plan is there a description of the length, frequency and duration of the "dyslexia services" she was supposed to receive or what they were hoping to achieve.

55.     As late as LISD's prior written notice to the parents dated 02-06-20 again specifically

13

the LISD noted that PW was "not making adequate progress" with any of the previously attempted interventions. Indeed, in a recorded meeting held on 02-04-20, an LISD staff member characterized RTI Tier 3 services, which P.W. reportedly received, as being for students "needing super huge intervention."

56.     After three years of requesting help – in first grade, second grade and third grade, the Leander ISD finally agreed P.W. was eligible for special education because of her ADHD. Leander ISD offered P.W. just  30 minutes each day of "in-class support" and stated it would "allow" P.W. to continue to be educated in her dyslexia classes. Exh. 1, par. 22-23.

57.     The February 2020 IEP for P.W. lacked any goal for reading of any kind.

**C.  Lack of services to address P.W.'s Anxiety and Depression**

58.     The student's psychiatrist, Dr. Amani Siddiqui, diagnosed P.W. with Generalized Anxiety Disorder, major depressive disorder, single episode and specific reading disorder. He completed an OHI Disability Form dated 01-28-20, noting ADHD and Major Depressive Disorder (MDD). The district had long been on notice that the student was seeing the psychiatrist. For example, the parent told first and second grade teacher in writing that PW had anxiety, was doing equine therapy and seeing a psychiatrist. The student's mother said she found out that P.W. had told her aunt that "sometimes she wishes she was dead." The parent told LISD staff about the comment and the psychiatrist's diagnosis. She gave them copies of the psychiatrist's paperwork. Staff testified that they knew the parent had taken P.W. to a psychiatrist for self-harm, but admitted this significant fact was not noted in the district's evaluation report.

59.     Leander ISD's evaluation notice noted that the FIE was supposed to include emotional/behavioral assessments, but there was no FBA or counseling assessment done as part of the FIE.

### D.  Failure to Ensure Collaboration with Parent.

60.      P.W.'s parents were involved with extra duties at Reagan Elementary, including being on the PTA board, home room mom, etc. At hearing, a teacher spoke positively of PW's parents: "It's always been very positive. Her parents were always very personable and engaging, very gracious. Always had just really nice things to say, very appreciative of our work and time together." Despite good faith on the parents' part, Leander ISD staff *actively and intentionally misinformed these trusting parents of Leander ISD's* obligations, which harmed P.W. and violated the law. The district also failed to timely inform the family of their rights, even though the law required it. This is egregious in light of parents' high personal investment in assisting LISD with their children's education.

61.      Collaboration means giving people information they need. Leander ISD failed to provide the parents with a special education Notice of Procedural Safeguards before placing P.W. in RTI during first grade. Leander ISD failed to provide the parents with a special education Notice of Procedural Safeguards before placing P.W. in Section 504 during second grade. Not until third grade, the 2019-2020 school year, did the parents receive a special education Notice of Procedural Safeguards for P.W. The SEHO ignored parent testimony about what and how or if the parent received this purported NOPS for the sibling. That NOPS was not provided in any way in relation to P.W.; apparently the parents were just supposed to "figure it out."

### E.  Fatally flawed IEP

62.      A February 3-5, 2020, IEP was the only IEP in existence at the time that the parents Filed for due process on February 28, 20201. As such, it was the *sole* IEP to be considered in determining whether the district offered a FAPE to the student.

63.      The SEHO erroneously considered subsequent remedial measures and declared an IEP

developed long after the special education case was filed to be the IEP at issue. Then he additionally erred in saying that the family had not given the district a chance to see "if the IEP would work" when in reality the student was served under the district's IEP for many weeks before she was removed and placed at the Rawson Saunders private school.

64.     Although goals and objectives are supposed to be the centerpiece of an IEP and drive all the services and the placement, PW's IEP has *zero goals and objectives in reading, writing, executive function, organization, anxiety / counseling, school avoidance behaviors, etc.* The district simply offered 3 goals in math, with no objectives.

## SEHO ERRORS AND OMISSIONS

65.     The IDEA mandates the responsibilities of a SEHO. 20 U.S.C. §1415(f)(3) requires a special education hearing officer to possess the knowledge and ability to conduct a hearing and write a decision consistent with standard legal practice based on an understanding of the IDEA. Here, the SEHO made serious and significant errors both factually and legally in significant portions of his decision. In many parts of the decision, his opinion appears to represent the will of the agency and as such is arbitrary and inconsistent with the IDEA and even state law.

66.     The SEHO egregiously erred in refusing to permit an exception to the one-year statute of limitations. The record reflects that the LISD took **intentional** steps to **actively prohibit** the parents from finding out about special education. First, Reagan principal Steve Crawford personally talked the parent out of a written special education evaluation request that she had made in writing in the fall of first grade and did so without providing her a special education Notice of Procedural Safeguards. Next, in second grade, the school told the parents about 504 but not about the alternative – special education. Finally, in third grade, the FIE evaluators mislead the parent

telling her the child could not be identified under special education and a specific learning disability because her disability was dyslexia.

67.     The IDEA mandates that school districts comply with state agency requirements. 20 U.S.C. §1401(9). The SEHO ignored this.

68.     The SEHO apparently intentionally did not apply a preponderance of the evidence standard and improperly applied older case law that is no longer applicable as to what constitutes an appropriate program.

69.     The SEHO wrongly excluded evidence, including both documentary evidence and testimony that Leander acted in a way to deny Plaintiff Parents meaningful participation because they were advocating for P.W.

70.     The SEHO made numerous erroneous evidentiary rulings.

71.     The SEHO's decision ignores the evidence throughout and is arbitrary and capricious, or alternatively represents a decision that is simply wrong over and over again in rejection of the preponderance of the evidence.

72.     Finally, the SEHO also failed to issue rulings on each proposed finding of fact and conclusion of law, as requested in writing by Plaintiffs and as required under Tex. Gov. Code 2001.141(e).

**FIRST CAUSE OF ACTION – IDEA AND TEXAS LAW**

1.     Plaintiffs re-allege paragraphs 1-72 above and incorporate them by reference in support of their claims pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§1400 et seq, and its related regulations at 34 C.F.R. Chapter 300. Plaintiffs also allege violations of the Texas Educ. Code Chapter 29 and 19 Tex. Admin. Code Chapter 89 both of which are to ensure that the IDEA is fully implemented in Texas. Plaintiffs seek reversal of the

portions of the IHO's Decision in all respects where it is contrary to fact and law. Plaintiffs specifically demand that this Court hold Defendant LISD accountable for its egregious failure to comply with the IDEA, as the facts above demonstrate, including that Leander ISD failed to:

    A.  Timely identify P.W. once staff suspected she had a disability.

    B.  Address the student's specific learning disabilities in math and reading.

    C.  Address the student's emotional disturbance, including anxiety.

    D.  Address the student's ADHD and executive function deficits.

    E.  Offer placement in the student's Least Restrictive Environment.

    F.  Offer compensatory services for the time period that student should have been eligible for services.

    G.  Ensure proper notices, meaningful participation and a collaborative approach.

    H.  Track progress and provide accurate progress reporting to the parent.

    I.  Failed to fairly consider placement at Rawson Saunders.

2.  Plaintiffs are already now and will continue to be a prevailing party and as such also seek their attorneys' fees and recoverable costs for representation before the SEHO and before this Court. Plaintiffs seek both pre-judgment and post-judgment interest on all attorneys' fees from before the SEHO and this Court as well as all recoverable costs pursuant to the IDEA.

## SECOND CAUSE OF ACTION (504/ADA)

Plaintiffs re-allege paragraphs 1 through 72 above and raise a second cause of action, pursuant to the Americans with Disabilities Act as Amended and Section 504, ADA/§504:

1.  Plaintiff Parents have suffered a pecuniary injury arising out of Defendant LISD's violation of the §504/ADA with respect to P.W. and have standing to pursue those claims. Plaintiff Parents request that they be reimbursed for all costs of reimbursement for services they

purchased and costs they have incurred for P.W. to date. This includes private placement at Rawson Saunders, and transportation for same.

2.   P.W. seeks a remedy for §504/ADA discrimination because she was treated differently because of her disability and her parents' advocacy.  She seeks relief for what she was not provided: designation as a qualified individual with a disability and compensatory services and a monetary damages remedy for what she did not receive contrary to §504 and her rights pursuant to the ADA.

3.   Plaintiff parents seek a remedy pursuant to §504/ADA because as a result of Leander ISD's treatment of P.W. and her parents, they found it necessary to move her to Rawson Saunders, a private school for which they incurred costs, which continue.

4. The SEHO did not reach any §504/ADA conclusion (for a stated lack of jurisdiction); but some of the factual decisions completely support remedies for P.W. that should have included compensatory education and reimbursement for private services the parents obtained in the absence of appropriate services from the district. Compensatory education, including tuition reimbursement is allowed in §504 cases. See, e.g., *Howard v. Friendswood Indep. Sch. Dist.*, 454 F. Supp. 634 (S.D. Tex. 1978) (non-IDEA eligible student provided §504 protections and reimbursement for unilateral placement); *David H. v. Spring Branch Indep. Sch. Dist.*, 569 F. Supp. 1324 (S.D. Tex. 1983) (where §504 eligible student denied benefits, payment for private school ordered).

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgment against Defendant LISD and grant the following relief:

1.      Reverse those parts of the IHO's decision that are contrary to fact or the IDEA

and state law.

2.    Order that P.W. is a qualified individual with a disability pursuant to the ADA/§504 and entitled to all of the rights and protections of those laws and set the remedy phase of the ADA/§504 claim for a jury trial on all available remedies, including monetary damages.

3.    Order that Plaintiffs' parents' separate independent parent rights were grossly violated as a matter of law. Further, the Court should order that the Defendant denied Plaintiff parents meaningful participation in the IEP process and that their rights were significantly infringed as a matter of law. These actions constituted significant infringement of Plaintiff parents' rights and impeded, delayed or denied their rights. LISD also discriminated against parents' contrary to the ADA/504.

4.    Order that LISD pay/reimburse the parents for the cost of evaluations.

5.    Order that LISD provide P.W. compensatory education to place her in the place she would have been but for the Defendant's gross violations of the IDEA, 504 and the ADA. This may be tuition reimbursement for Rawson Saunders and related expenses such as transportation as well as compensatory education.

7.    After a jury trial, declare Plaintiffs prevailing party in the litigation and allow submission of Plaintiffs' reasonable attorneys' fees and related costs as permitted by law and incurred in the administrative proceedings, award additional fees and costs incurred in pursuing the current action and award Plaintiffs' pre-judgment and post-judgment interest on any and all awards of fees and costs; and

8.    Such other and further relief to which Plaintiffs are entitled.

Respectfully submitted this 18th day of August 2021.

*/s/Sonja D. Kerr*
Sonja D. Kerr, Tx Bar No. 24095771
Catherine Michael, Tx Bar No. 4079661
Connell Michael Kerr, LLP
**Main Office:**
550 Congressional Ave, Suite 115
Carmel IN 46032
Ph: 317-343-4482
**Austin Office**:
9600 Great Hills Trail, Suite 150W
Austin Tx 78759
Ph: 512-637-1083
Fax: 512-717-5204
Email: sonja@cmklawfirm.com
Email: catherine@cmklawfirm.com

*s/Dorene Philpot*
Dorene Philpot
TX Bar No. 24055011
Philpot Law Office PLLC
7314 Offats Pointe
Galveston, TX 77551
voice 281-989-2010
fax 866-324-4995
email: fape4kids@protonmail.com

Counsel for P.W., by and through
her parents/guardians and next friends