UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| P.W., AN INDIVIDUAL WITH A DISABILITY, AND J.W. AND A.W., PARENTS/GUARDIANS/NEXT FRIENDS OF P.W., | § § § § | No. 1:21-CV-00722-DAE |
| | § | |
| Plaintiffs, | § § | Jury Trial Demanded on Certain Claims (ADA/§504) |
| | § | |
| vs. | § § | |
| | § | |
| LEANDER INDEPENDENT SCHOOL DISTRICT, | § § | |
| | | |
| Defendant. | | |

ORDER

Before the Court is a corrected Motion for Judgment on the

Administrative Record or a Motion for Summary Judgment filed by Plaintiff P.W.

("Plaintiff" or "P.W.") on October 26, 2023. (Dkt. # 94.)[1] Defendant Leander

Independent School District ("LISD" or "Defendant") filed a response in

opposition on July 14, 2023. (Dkt. # 78.) Plaintiff replied on July 28, 2013. (Dkt.

# 83.)

On June 20, 2023, Plaintiff also filed a Motion to Accept Additional

Evidence pertaining to her Motion for Judgment on the Administrative Record or

---

[1] Plaintiff filed her original Motion on June 30, 2023. (Dkt. # 72.) The Court considers only her corrected motion.

Motion for Summary Judgment. (Dkt. # 73.) Defendant responded in opposition to Plaintiff's Motion to Accept Additional Evidence, styled as a Motion to Strike, on July 7, 2023. (Dkt. # 77.) Plaintiff filed a Response on July 19, 2023. (Dkt. # 80.) Defendant replied on July 26, 2023. (Dkt. # 81.)

Defendant filed its combined Motion for Judgment on the Administrative Record for IDEA Claims and Motion for Summary Judgment on ADA/Section 504 Claims on June 30, 2023. (Dkt. # 74.) Plaintiff filed a response in opposition on July 14, 2023. (Dkt. # 79.) Defendant replied on July 28, 2023. (Dkt. # 84.)

The Court finds this matter suitable for disposition without a hearing. After carefully considering the filings, the Court **DENIES** in part and **GRANTS** in part Plaintiff's Motion to Accept Additional Evidence (Dkt. # 73), **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (Dkt. # 94), **DENIES** in part and **GRANTS** in part Defendant's Motion for Judgment on the Administrative Record and **DENIES** Defendant's Motion for Summary Judgment. (Dkt. # 74.) This case was originally assigned to Judge Robert Pitman and was transferred to the undersigned.

BACKGROUND

I.    Factual Background

Plaintiff is a child with ADHD, dyslexia, and anxiety. (Dkt. # 52 ¶ 2.) Plaintiff attended an LISD elementary school from kindergarten through third grade.  (Id. ¶ 9.)  During that time, Plaintiff qualified for and received services for her dyslexia under Section 504 of the Rehabilitation Act of 1973 ("Section 504"). See 29 U.S.C. § 794.  At Plaintiffs' request, LISD also conducted a Full Individual Evaluation ("FIE") pursuant to the Individuals with Disabilities Education Act ("IDEA"), which revealed that Plaintiff qualified for special education services as a child with ADHD.  See 20 U.S.C. § 1400 et seq.

After Plaintiff's ADHD diagnosis, LISD created an Individualized Education Plan ("IEP") that provided support for Plaintiff's ADHD. Plaintiff's parents claim this IEP was insufficient as it allegedly did not address her anxiety or dyslexia. (Dkt. # 52 ¶¶ 113-125.)

A.    Kindergarten (2016-17) and First Grade (2017-18)

Plaintiff's kindergarten teacher reported that she was writing in "reversal place value" in a "hit or miss" fashion.  This teacher noted that Plaintiff's educators needed to "keep an eye" on her letter reversals, which is the first sign of disability in the record.  (Dkt. # 52 ¶ 51.)  Despite this observation, the teacher did not refer Plaintiff for special education evaluation at this time.  (Id. ¶ 52.)  She

testified that it was not her practice to refer kindergarten students to special education.  (Dkt. # 94 at 11.)  Plaintiff was not singled out – the teacher had referred no kindergarten student for special education.  (Dkt. # 52 ¶ 52.)

At the beginning of first grade, Plaintiff was still reversing 3 letters and numbers.  (Id. ¶ 56.)  In response, LISD initiated Response to Intervention ("RTI") services for Plaintiff in both reading and math.  (Id. ¶ 57.)

On November 17, 2017, Plaintiff's mother brought a special education evaluation request form to the principal of the elementary school, Steve Crawford ("Crawford").  (Dkt. # 51-11 at 2.)  Plaintiffs allege that Crawford talked P.W.'s mother out of pursuing special education testing, "and recommended instead that the parents 'wait and see' if RTI could help her."  (Dkt. # 52 ¶ 64.)  Plaintiffs argue LISD therefore misrepresented that RTI would cure the problem and improperly used RTI to delay special education services.  (Dkt. # 94 at 4–5.)  According to Plaintiffs, Crawford told P.W.'s mother she could withdraw the FIE request in writing, which she did.  (Dkt. # 51- 11 at 3.)  Crawford does not remember this conversation and refutes that he would ever have talked parents out of pursuing special education services for a student.  (AR 1258:20-24; 1265:9-12; 1267:4-9; 1268:2-4; 1271:20-21; 1272:24-25; 1273:1-2).  P.W. continued to receive RTI throughout the first grade to address her disabilities. (Dkt. # 52 ¶ 76.)

B.  Second (2018-19) and Third Grade (2019-20)

On August 20, 2018, when Plaintiff was in second grade, Plaintiff's mother requested "a full diagnostic dyslexia testing assessment." (Dkt. # 51-11 at 6.)  LISD completed a dyslexia-specific evaluation, which demonstrated that Plaintiff did have dyslexia.  (Dkt. # 52 ¶ 87.)  LISD then developed and implemented a Section 504 plan to address Plaintiff's needs.  (Id.)

At the end of second grade, however, Plaintiff was still performing below grade level.  (Id. ¶ 91.)  At this point, as part of the Section 504 plan, Plaintiff's teachers were reading "all of the required schoolwork" out loud to her. (Id. ¶ 111.)

In the fall of third grade, on September 20, 2019, Plaintiff's mother asked LISD to complete a FIE to evaluate P.W. for special education services given her lack of progress.  (Id. ¶ 92.)  Plaintiffs allege that this was the first time they received the "Notice of Procedural Safeguards" as required by the IDEA.  See 20 U.S.C. § 1415(c); (Dkt. # 52 ¶ 93; 51- 11 at 5.)  The FIE determined whether Plaintiff qualified for special education and related services, specifically in the areas of emotional disturbance, Other Health Impairment ("OHI"), and Specific Learning Disability ("SLD").  (Dkt. # 51-7 at 53.)  The evaluation comprised several cognitive testing instruments, discussions with Plaintiff's parents and

teachers, and consultation with an independent psychologist. (Id.)  The FIE was completed on January 8, 2020.  (Id.)

On February 3 and 5, 2020, LISD held an Admission, Review, and

The FIE determined that Plaintiff had an OHI due to ADHD, which qualified her for special education and related services.  (Dkt. # 51-4 at 14-15.) The FIE also noted her dyslexia diagnosis but did not find that she qualified as a student with anxiety, emotional disturbance, or an SLD.  (Id.; see also Dkt. # 51-8 at 1-58.)  It also recommended accommodations, including visual number charts, thirty minutes of in-class support, and continued dyslexia classes.  (Dkt. # 51-8 at 1-58.)

On February 3 and 5, 2020, LISD held an Admission, Review, and Dismissal ("ARD") meeting to initiate special education services for Plaintiff under an IEP.  (Dkt. # 51-4 at 15; P. Ex.2 43, 45.)  Shortly after this first ARD, LISD instruction moved online due to the COVID-19 pandemic.  (Dkt. # 51-4 at 16.)  Virtual instruction continued for the rest of the school year.  (Id.)

C.  Fourth Grade (2020-21)

In August 2020, Plaintiffs had Dr. Melissa Bunner complete an IEE. (Id.)  Dr. Bunner made twenty recommendations over two reports on how Plaintiff's IEP could be adjusted to better suit her needs.  (Id.)  In her second report, Dr. Bunner suggested that P.W. attend Rawson Saunders, a private school

for children with dyslexia, at the parent's request, but also clarified that LISD

could also provide appropriate services. (AR 3744:18-20; 3744:24-25; 3745:1).

On September 3, 2020, LISD convened another ARD meeting to

address the IEE.  The district reviewed both Dr. Bunner's recommendations and

Plaintiff's progress since February 2020, when the IEP was put in place, to

determine how the IEP could be best adjusted to meet Plaintiff's needs. (Id.) The

ARD meeting was reconvened on September 25, 2020, and LISD added

accommodations to Plaintiff's IEP based on Dr. Bunner's recommendations. (Id. at

17.)  Plaintiff then attended LISD for the first few weeks of the 2020-21 school

year before transferring to Rawson Saunders for the rest of the school year. (Dkt. #

52 ¶¶ 9-11.)

II.    Procedural Background

A. Due Process Hearing – IDEA Claims

The IDEA requires states to provide children with disabilities a free,

appropriate public education ("FAPE").  See 20 U.S.C. § 1400(d); 34 C.F.R. §§

300.101(a), 300.201; Tex. Educ. Code § 29.001.  The IDEA also imposes a "Child

Find" obligation on state school districts, under which states must identify and

locate all children with disabilities who may need special education and related

services.  See 20 U.S.C. § 1412(3)(A).  A dissatisfied parent may challenge a

school district's compliance with the IDEA's Child Find and/or FAPE duty through

a due process hearing before a Special Education Hearing Officer ("SEHO").  See 20 U.S.C. §§ 1415(b)(6), 1415(f)(1)(A).

On February 28, 2020, Plaintiffs requested a due process hearing. (Dkt. # 52 ¶ 16.)  Because of the COVID-19 pandemic, the hearing did not occur until April 20, 2021.  (Id. ¶ 18.)  At the hearing, Plaintiffs alleged that LISD (1) violated its Child Find duty by failing to complete a FIE until January 8, 2020; (2) conducted a deficient FIE by not identifying P.W. as a student with anxiety and an SLD; and (3) failed to offer P.W. a FAPE.  (Dkt. # 51-4 at 5-7.)  The SEHO found that LISD had violated its Child Find obligation by delaying a special education evaluation from at least February 2019 to January 8, 2020.  (Id. at 25.)  Even so, the SEHO found that LISD's FIE was not deficient, and that LISD had offered a FAPE to P.W. through the IEP created in February 2020.  (Id. at 34.)

SEHOs have broad equitable powers to fashion appropriate relief where there has been a violation of the IDEA.  Here, the SEHO awarded compensation for LISD's failure to provide Plaintiff special education and related services from February 2019 to February 2020.  (Id.)  But because LISD offered a FAPE before the 2020-21 school year, the SEHO denied compensation for Plaintiff's attendance at Rawson Saunders from 2020-22.  (Id.)  Plaintiff challenges this finding.

B. <u>Due Process Hearing – Section 504 and ADA Claims</u>

An aggrieved parent may assert claims under the IDEA as well as the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("§ 504"). <u>Marvin H. v. Austin Indep. Sch. Dist.</u>, 714 F.2d 1348, 1356 (5th Cir. 1983.) The ADA "forbids any 'public entity' from discriminating based on disability," while § 504 "applies the same prohibition to any federally funded 'program or activity.'" <u>Fry v. Napoleon Cmty. Sch.</u>, 580 U.S. 154, 137 S. Ct. 743, 749, 197 L. Ed. 2d 46 (2017). The Fifth Circuit has "equated liability standards under § 504 and the ADA," so Section 504/ADA claims are evaluated in tandem. <u>D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.</u>, 629 F.3d 450, 453 (5th Cir. 2010). At the due process hearing, Plaintiffs alleged non-IDEA claims under Section 504 and the ADA against LISD based on the same factual allegations. (Dkt. # 52 ¶ 31.) The SEHO dismissed the Section 504/ADA claim for lack of subject-matter jurisdiction. (<u>Id.</u>)

C. <u>Appeal to the District Court</u>

Parties to a due process hearing may appeal the SEHO's decision to a district court of the United States. 20 U.S.C. § 1415(i)(2). On August 18, 2021, Plaintiffs filed the instant suit against LISD as an appeal of the SEHO's determination of the IDEA claim, adding their previously dismissed Section 504/ADA claim against LISD. (Dkt. # 1.) Plaintiffs claim that they sought relief

under § 504/ADA, and Defendant does not challenge exhaustion. The SEHO decision lacks any mention of the Section 504/ADA claim, so the Court assumes without deciding that Plaintiffs appropriately raised the Section 504/ADA claim and addresses the merits of that claim.

On November 10, 2022, the Court granted Defendant's Motion for Partial Judgment on the Pleadings but allowed Plaintiff leave to amend her complaint.  (Dkt. # 50.)  Plaintiff filed her Second Amended Complaint on December 1, 2022, which is the operative pleading.  (Dkt. # 52.)  Plaintiff alleges that LISD: (1) violated its Child Find duty; (2) deprived Plaintiff of a FAPE under its proposed IEP; and (3) violated Section 504/ADA by failing to timely test Plaintiff and provide her special education services.  (Id. at 35-39.)

Plaintiff now moves for Judgment on the Administrative Record as to the IDEA claims.  (Dkt. # 94.)  LISD moves for Judgment on the Administrative Record on the IDEA claims and for Summary Judgment on the Section 504/ADA claims.  (Dkt. # 74.)

## LEGAL STANDARD

I.    Motion for Judgment on the Administrative Record

Any party aggrieved by a Special Education Hearing Officer's (SEHO) decision can appeal to district court.  20 U.S.C. §1415(i)(2)(A).  The Court reviews the SEHO's findings virtually de novo.  Lisa M. v. LISD, 924 F.3d

205, 213 (5th Cir. 2019).  In reviewing the decision, the Court 1) receives the

administrative hearing record; 2) hears relevant additional evidence; and 3) issues

an independent decision based on a preponderance of the evidence.  20 U.S.C.

§1415(i)(3)(G).  The Court's task is to determine whether a school complied with

the IDEA and must do so without substituting its own "notions of sound

educational policy for those of the school authorities which they review."  Bd. of

Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982);

see White v. Ascension Par. Sch. Bd., 343 F.3d 373, 377 (5th Cir. 2003) (citing

Flour Bluff Indep. Sch. Dist. v. Katherine M., 91 F.3d 689, 693 (5th Cir. 1996);

R.H. v. Plano Indep. Sch. Dist., 607 F.3d 1003, 1010 (5th Cir. 2010).

II.    Motion for Summary Judgment

        Summary judgment is appropriate if the movant shows that there is

"no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact

exists 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'"  Bennett v. Hartford Ins. Co. of Midwest, 890 F.3d 597, 604

(5th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)).

        Accordingly, at the summary judgment stage when the non-movant

bears the burden of proof at trial, "the movant may merely point to the

absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial." Nola Spice Designs, LLC v. Haydel Enters., ., 783 F.3d 527, 536 (5th Cir. 2015) (quotations omitted). "When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010). Instead, the non-movant must identify specific evidence in the record and articulate how that evidence supports the party's claim. Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014).

At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form. See Fed. R. Civ. P. 56(c); Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017). The court draws all reasonable inferences in the light most favorable to the nonmoving party. Wease v. Ocwen Loan Servicing, LLC, 915 F.3d 987, 992 (5th Cir. 2019). That said, "unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012).

III.    <u>Additional Evidence for Judgment on the Administrative Record</u>

   The IDEA provides that a district court's review of an SEHO's decision must be decided by a preponderance of the evidence based on the original administrative proceedings and additional evidence.  20 U.S.C. § 1415(i)(2)(C).  The IDEA requires courts to weigh the appropriateness of supplementation to the administrative record.  A court should prevent admitting additional evidence that may cause prejudice or transform the court's review into a new hearing.

   "[R]endering a decision on the record complied before the administrative agency…is the norm."  <u>E.R. v. Spring Branch Indep. Sch. Dist.</u>, 909 F.3d 754, 763-764 (5th Cir. 2018) (citing <u>Town of Burlington v. Dep't of Educ. for Mass.</u>, 736 F.2d. 773, 790 (1st Cir. 1984)).  The district court need not admit all additional evidence offered by parties in reviewing a SEHO's decision.  Id.  "[I]f parties could always introduce additional evidence in the district court 'to patch up holes in their administrative case,' the administrative proceedings would no longer receive the weight they are due."  <u>Id.</u> at 764.

   While a district court need not admit all additional evidence, it has the discretion to admit certain additional evidence.  <u>Town of Burlington</u>, 736 F.3d at 790.  A district court should admit evidence that was wrongly excluded by the SEHO and "evidence concerning relevant events occurring subsequent to the administrative hearing."  <u>Id.</u> at 790–791.

IV.   <u>Additional Evidence for Motion for Summary Judgment</u>

Rule 56 provides that a non-moving party to a motion for summary judgment has a right to offer the Court evidence to show a fact is genuinely disputed and refute the motion.  Fed. R. Civ. Pro. 56.  Declarations, depositions, and other written statements are admissible.  The evidence also need not be authenticated or otherwise presented in an admissible form.  See Fed. R. Civ. P. 56(c); <u>Lee v. Offshore Logistical & Transp., LLC</u>, 859 F.3d 353, 355 (5th Cir. 2017).

V.   <u>Motion to Strike</u>

Rule 12(b)(6)(f) provides a party may move to strike any "insufficient defense, or any redundant, immaterial, impertinent or scandalous matter" from pleadings.  Fed. R. Civ. Pro. 12(b)(6)(f).  Striking a pleading is a drastic measure and disfavored.  <u>Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.</u>, 306 F.2d 862, 868 (5th Cir. 1962).

DISCUSSION

I.   <u>Additional Evidence</u>

Plaintiff asks the Court to accept additional evidence in considering her appeal of the SEHO's decision on her IDEA claims and her motion for summary judgment on the ADA/Section 504 claims.  (Dkt. # 73.)  Plaintiff writes

her dispositive motion on the IDEA claims assuming the Court accepts the additional evidence.  (Dkt. # 94.)  Defendant asks the Court to strike any mention of the additional evidence in Plaintiff's dispositive motion.  (Dkt. # 77.)  The Court addresses Defendant's objections in turn.

A. AE 1–20, Plaintiff's Exhibits 22–23

The SEHO excluded Exhibits 22–23 as irrelevant.  The exhibits relate to a due process hearing between LISD and another student at Regan Elementary in a previous case.  (Dkt. # 73 at 2.)  In this case, Former Regan Principal Steve Crawford testified that he was partially in charge of managing special education and making sure related rules were complied with at the school.  (Id.)  Plaintiff intended to introduce this evidence for purposes of impeachment at the hearing, calling the evidence contrary to Crawford's testimony here that it was not his job to manage special education referrals.  (Dkt. # 73 at 2; Dkt. # 77 at 4.)  No need arose to introduce the evidence for impeachment at the hearing, as Mr. Crawford was not called to testify.  (Id.)  The exhibits were therefore not included or considered by the SEHO.  (Id.)

The Court finds the exhibits are not now relevant to establish a fact of consequence in the current matter.  The SEHO held that Crawford did not provide an IDEA NOPS.  (Dkt. # 72 at 2.)  And while Plaintiff claims that LISD argues the record contains a document suggesting he did provide this notice, LISD argues in

its Motion to Strike that Mr. Crawford's role in providing or not providing the

Notice of Procedural Safeguards is not at issue. (Dkt. # 73 at 2; Dkt. # 77 at 5,

n.9.) This previous testimony evidence was not relevant at the hearing and not

considered at the underlying hearing because Mr. Crawford did not testify. The

Court finds no need to rely on the evidence now when it is still not needed to

impeach Mr. Crawford or rebut a claim made by LISD. AE 1–20 is excluded from

the Court's review of the SEHO's decision.

B. <u>AE 21–295, Plaintiff's Exhibits 38–48</u>

The SEHO excluded Exhibits 38–48 at the hearing. These exhibits

are Plaintiff's parents' self-made transcripts of audiotaped conversations. (Dkt. #

72 at 3.) Recordings of the conversations are already admitted as evidence in the

administrative record. (Dkt. # 77 at 5.) The Court finds no need to admit these

notes on the recordings, as the Court can review the recordings themselves.

Plaintiff suggests the Court can "double-check" any disputes over accuracy

because the recordings are in evidence. (Dkt. # 72 at 3.) First, under the best-

evidence rule, the recordings, not the notes, should be admitted. Fed. R. Evid.

1002. Second, if the Court may have to review the audio recordings to fact-check

the notes anyway, it makes little sense to rely on the notes. AE 21–295 is excluded

from the Court's review of the administrative decision and from its consideration

of Plaintiff's Motion for Summary Judgment.

C. <u>AE 296–307, Plaintiff's Exhibit 76</u>

Exhibit 76 is a publicly available Texas Education Agency ("TEA")

document about nonpublic schools for students with disabilities that are approved

for contracting purposes.  (Dkt. # 73-1 at 2.) This exhibit was offered by Plaintiff at

the hearing for potential impeachment, and the SEHO excluded the evidence

except for impeachment purposes.  (Dkt. # 77 at 6.)  Plaintiff never used the exhibit

for impeachment at the hearing, and the exhibit was never admitted.

Defendant argues the exhibit was never admitted at the hearing, so the

Court should not admit it now.  Defendant further argues that the exhibit is

inadmissible hearsay under Fed. R. Evid. 803.  The Court finds Defendant's Rule

803 assertion unconvincing.  Rule 803 lays out the exceptions to the rule against

hearsay when a declarant may not be available as a witness.  Exhibit 76 is a

statement or record of a public office, the Texas Education Agency.  It sets out

factual findings about the nonpublic schools for students with disabilities that are

approved for TEA contracting purposes.  Defendant does not show here that any

circumstance points to a lack of trustworthiness.  The exhibit would qualify for the

public record exception under Rule 803(8).

Even though the exhibit may be admissible, the Court finds it should

be excluded from its review of the administrative record for a lack of relevance.

Plaintiff offers that the information is relevant to prove whether the school district

has offered Plaintiff a program that "meets the state agency standards."  (Dkt. # 73 at 3.)  The document lists the approved schools, and provides each school's address, telephone number, main point of contact, its approval status, the date through which the school is approved, the age ranges served, and the disability conditions served.  (Dkt. # 73-2 at 297–307.)  The document provides no information about TEA's standards for approving the schools, even failing to explain the distinction between being approved for a day school or a residential school.  (<u>Id.</u>)  As a result, the Court finds the document does not prove whether the school district has offered Plaintiff a program that meets TEA standards.  Without more, the document simply lists approved nonpublic schools for specific disabilities and age ranges.  It does not provide any metric for comparing LISD or Rawson Saunders to the schools it lists.  AE 296–307 is excluded.

   D. <u>AE 296–381, Plaintiff's Exhibits 77–79</u>

        The SEHO excluded Exhibits 77 and 78, finding they did not overcome LISD's hearsay objection.  The SEHO excluded Exhibit 79 for failing to meet the "public document" exception to hearsay.  Exhibit 77 is a TEA presentation on Dyslexia and Related Disorders and how they are managed in the IDEA and the Individualized Education Program (IEP) in Texas.  (Dkt. # 73-2 at 309.)  It explains IEP goals, services, supports, and considerations, as well as accommodations, instruction, and interventions to be provided under the IEP for

these disabilities.  (Id.)  Exhibit 78 is a TEA document that sets out similar information to Exhibit 77 in a different format.  (Id. at 338.)  Exhibit 79 is a letter from the U.S. Department of Education to the Commissioner of the TEA.  (Id. at 351.)

The Court finds these exhibits are admissible as public records. Exhibits 77 and 78 are records of a public office, the TEA, and they set out factual findings related to the office's activities in explaining the IDEA and IEP requirements for schools assisting children with dyslexia and related disabilities. Exhibit 79 is a statement of a public office, the U.S. Department of Education, that sets out the factual findings from the Department's legally authorized investigation of the TEA's implementation of the State's Corrective Action Response related to the State's previously deficient implementation of the IDEA.  Defendant does not show that any of these exhibits should be suspected of a lack of trustworthiness in the accuracy of information.  Each exhibit satisfies the public record exception. Fed. R. Evid. 803(8).

The Court finds these documents are relevant to its review of the SEHO decision, as they set out the state and federal standards for complying with the IDEA and IEP requirements LISD should have met here.  The Court will not strike mentions of AE 296–381 in Plaintiff's dispositive motion.  (Dkt. # 94.)

E.  <u>AE 489 – 552, "School Records"</u>

Plaintiff wants to introduce school records that were initially LISD's hearing exhibits but which the District ultimately did not offer into evidence at the due profess hearing.  (Dkt. # 77 at 7.)  LISD had disclosed that it may present the evidence, but it ultimately did not.  The evidence was therefore not admitted.  In a perfect world, Plaintiff should have offered the documents into evidence as part of her own disclosure.  And evidence available to the requesting party before an agency hearing will rarely constitute additional evidence.  (<u>Id.</u>)  Even so, the Court finds the school records are relevant to whether LISD properly met P.W.'s needs under the IDEA.  For example, the records include a dyslexia progress monitoring card, testing reports, and a record of intervention and progress filled out by P.W.'s teachers.  The evidence is also not shocking or surprising to Defendant, as these exhibits were originally Defendant's own.  This Court is not required to allow all evidence proffered by a Plaintiff into evidence, but the Court retains discretion to admit relevant, non-hearsay, non-prejudicial evidence.  <u>E.R. v/n/f E.R. v. Spring Branch Indep. Sch. Dist.</u>, 909 F.3d 754, 764 (5th Cir. 2018).  The school records are not stricken.

F.  <u>AE 382–552, Deposition of Jennifer Freeman</u>

Jennifer Freeman was the School's Rule 30(b)(6) witness and gave testimony about LISD's policies and procedures about RTI and Section 504.  (Dkt.

# 73 at 3.)  Defendant argues Freeman's deposition was used at the hearing for an improper purpose and is unrelated to whether LISD discriminated intentionally against P.W. under the ADA or Section 504.  (Dkt. # 77 at 8.)

Upon reviewing Freeman's deposition, the Court finds it is relevant to establish the typical timelines for referring to special education after RTI interventions are not working.  (Dkt. # 73-2 at 390.)  Freeman also explains how often students are evaluated, the type of notice parents receive on student progress, and the effect of the TEA corrective action instituted by the U.S. Department of Education on LISD policies.  (Id. at 391–92.)  Freeman's testimony as to how special education is typically handled for students is relevant to determining whether Plaintiff was treated differently by the LISD.  While it is true this deposition may not directly prove intentional discrimination, it can serve as circumstantial evidence of discrimination.  (Dkt. # 77 at 8.)  Finally, this evidence is before the Court on grounds the SEHO did not have jurisdiction to evaluate. Defendant's concern that Plaintiff is attempting to "use the federal discovery process as an end-run around its own failure to disclose exhibits in the underlying hearing," does not apply.  AE 382–552 are admitted for the Court to consider with respect to the ADA/Section 504 claims.

G. <u>AE 553 – 602, 26(f) Reports of Dr. Amy Brown and Dr. Melissa Bunner and Jennifer Sangave's Declaration</u>

Plaintiff seeks to include updated reports of Dr. Amy Brown and Dr. Melissa Bunner.  (Dkt. # 77 at 8.)  Both doctors evaluated Plaintiff before the hearing and provided reports that were admitted as evidence in the hearing and testified as part of the hearing.  (Id.)  The new reports speak to Plaintiff's progress after her move to Rawson Saunders.  <u>Town of Burlington v. Dep't. of Education</u> provides that "evidence concerning relevant events occurring subsequent to the administrative hearing" is a reason for supplementing an administrative record. 736 F.3d 773, 790–791 (1st Cir. 1984).  "[I]n many instances experts who have testified at the administrative hearing will be bringing the court up to date on the child's progress from the time of the hearing to the trial."  <u>Id.</u>  That is exactly the case here.  The Court finds these 26(f) reports are properly offered and admits them as additional evidence.

Jennifer Sangave's declaration similarly updates the court on Plaintiff's progress.  Sangave's declaration compares P.W.'s test results from February 5, 2020 to results from her May 23, 2022 test before Sangave.  (Dkt. # 73-2 at 555.)  The Court's review of the report finds that it does not show a lack of progress prior to P.W.'s identification as a special education student or progress after Rawson Saunders.  P.W.'s percentile ranking decreased from 2020 to 2022 in many test areas.  (See <u>id.</u>)  This inconsistent progress is relevant to inform the

Court about Plaintiff's full circumstances after the hearing.  Sangave's declaration is admitted.

## H.  AE 603–611, Janette Hahn's Expert Report

Dr. Janette Hahn addresses LISD's compliance with professional education standards in identifying P.W. as a special education student and whether the school offered her an appropriate public education.  (Dkt. # 73 at 6.)  Defendant objects that Hahn's report is not relevant to the administrative decision appeal.  (Dkt. # 77 at 9.)  The Court agrees, as does Plaintiff.  The report is offered for the Court's consideration as to the ADA/Section 504 claims, which, again, the SEHO did not have the jurisdiction to review.  (Dkt. # 73 at 6.)  This report is admitted as additional evidence for the ADA/Section 504 claims.

## I.  AE 612–641, Rawson Saunders Contracts

Defendant objects to Plaintiff submitting Rawson Saunder's contracts, claiming the records are hearsay.  (Dkt. # 77 at 9–10.)  The Court finds the contracts are admissible under the business records exception.  Fed. R. Evid. 803(6).  The contracts are a written record of the tuition charged by Rawson Saunders each year, and the contracts are created in the normal course of business.  A Rawson Saunders employee could testify to the school's record-keeping standards, and Defendant provides no basis for the Court to conclude the contracts do not meet the trustworthy requirement of the rule.  The contracts may be

irrelevant to the Court's consideration of whether LISD provided P.W. with a FAPE, but the contracts are relevant to determine damages.  (Dkt. # 77 at 10.)  The contracts are admitted as additional evidence.

II.    IDEA Claims

Plaintiff and Defendant both move for a judgment on the administrative record with respect to Plaintiff's IDEA claims. Plaintiff asks the Court to review whether the Special Education Hearing Officer ("SEHO") (1) incorrectly calculated the length of the Child Find Violation, (2) clearly erred in holding LISD offered P.W. an IEP/FAPE, and (3) failed to fully compensate P.W. in not awarding tuition expenses for Rawson Saunders.  (Dkt. # 78 at 1.) Defendant asks the Court to reconsider the SEHO's finding that there was a Child Find Violation and affirm the SEHO's finding that LISD provided an IEP/FAPE. (Dkt. # 78 at 20.)

The IDEA creates a presumption in favor of the education plan proposed by the school district to address a student's special education needs.  See Schaffer v. Weast, 546 U.S. 49, 62 (2005).  On appeal, Plaintiff bears the burden of proof to establish that LISD failed to comply with the IDEA, including in providing Plaintiff a FAPE.  Seth B. v. Orleans Par. Sch. Bd., 810 F.3d 961, 972 (5th Cir. 2016).  LISD bears the burden to prove the SEHO's decision that there was a Child Find Violation was wrong and should be reversed.  Id.

The Court must review the SEHO's findings de novo and reach an independent decision on each finding based on a preponderance of the evidence. Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 347 (5th Cir. 2000); Cypress Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 252 (5th Cir. 1997). The Court considers each challenged finding in turn.

A. Child Find Violation

A child experiences an "egregious loss of educational opportunity" when the child should be identified as a student eligible for special education and is not so identified. Michael P. v. Dept. of Educ., 656 F.3d 1057, 1068 (9th Cir. 2011). The IDEA's Child Find obligation imposes an affirmative duty on school districts to have policies and procedures in place to locate and timely evaluate children with suspected disabilities in its jurisdiction, including "[c]hildren who are suspected of being a child with a disability....and in need of special education, even though they are advancing from grade to grade." 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.111(a), (c)(1). The Fifth Circuit has established that children must be identified within a "reasonable-time," and has found 99 days to be too long. Spring Branch ISD v. O.W., 961 F.3d 781, 790 (5th Cir. 2020). The Fifth Circuit applies a three-step inquiry to determine whether the reasonable-time standard has been met: (1) the date the Child Find requirement was triggered due to the district's

notice of a likely disability, (2) the date the Child Find duty was ultimately satisfied, and (3) the reasonableness of the delay between these two dates.  Id.

LISD did not identify Plaintiff as a student needing special education until February 2020.  Plaintiff asserts she should have been identified well before 2020.

Upon reviewing the administrative record, the Court finds LISD was on notice of a likely disability when Plaintiff was in first grade.  At this point, Plaintiff's kindergarten teacher had identified that Plaintiff was writing in "reversal place value" in a "hit or miss" fashion.  She said the district needed to "keep an eye" on Plaintiff's letter reversals.  (Dkt. # 52 ¶ 51.)  Despite this observation, the teacher did not refer Plaintiff for special education evaluation at this time.  (Id. ¶ 52.)  However, it may have been too early to be on notice of a likely disability when Plaintiff was only first showing signs of a potential learning issue.  That said, at the beginning of first grade, Plaintiff was still reversing 3 letters and numbers. (Id. ¶ 56.)  In response, LISD initiated Response to Intervention ("RTI") services for Plaintiff in both reading and math.  (Id. ¶ 57.)

Then, on November 17, 2017, Plaintiff's mother brought a special education evaluation request form to the principal of the elementary school Crawford.  (Dkt. # 51-11 at 2.)  Plaintiffs allege that Crawford talked P.W.'s mother out of pursuing special education testing, "and recommended instead that the

parents 'wait and see' if RTI could help her."  (Dkt. # 52 ¶ 64.)  The district at this point was on notice of Plaintiff's likely disability and failed to evaluate her for special education services, even after the parents initiated paperwork to have her tested.  While it is reasonable for a school district to attempt interventions like Section 504 services and RTI before evaluating a student for special education and related services, those interventions cannot replace special education for a student for whom those interventions are not working.  <u>O.W.</u>, 961 F.3d at 794.  In November 2017, it was clear that Plaintiff had a likely disability and that RTI was not addressing the full extent of her disability, demonstrated by her parent's request for FIE.

Using November 2017 as the date the district was on notice of a likely disability, the Child Find Violation should have been nearly 3 years in length, until the district started an FIE in 2020.  The delay was not reasonable, and the SEHO correctly found a Child Find Violation.  As explored below, the length of the Child Find Violation does not change the sufficiency of the remedy here as it does not impact the statute of limitations or speak to the sufficiency of the IEP/FAPE the district eventually adopted.

B.  <u>Statute of Limitations</u>

In Texas, "parents seeking relief under the [Individuals with Disabilities Education Act (IDEA)] must request a due process hearing within one

year of the date the complainant knew or should have known about the alleged

action that serves as the basis for the request." T.C. v. Lewisville Indep. Sch. Dist.,

No. 4:13-cv-186, 2016 WL 705930, at *9 (E.D. Tex. Feb. 23, 2016); 19 Tex.

Admin. Code § 89.1151(c). There are two statutory exceptions to the one-year

statute of limitations: (1) the school district made a specific misrepresentation that

it had resolved a problem prompting the request for a hearing, which results in

parents delaying requesting a hearing, or (2) the school district withheld

information from the parent that was required to be provided under the IDEA, such

as an IDEA Notice of Procedural Safeguards ("NOPS"). 19 Tex. Admin. Code §

89.1151(d); 34 C.F.R. § 300.511.

   The SEHO determined neither exception applied. Under the SEHO's

determination, all claims arising before March 3, 2019 are time barred because

Plaintiff's request for a due process hearing was received by TEA on March 2,

2020. (Dkt. # at 10.) Plaintiff argues the SEHO erred in finding neither exception

to the one-year statute of limitation applied. (Dkt. # 94 at 4.) Plaintiff argues the

SEHO should have found a Child Find violation of two to three years, not one. (Id.

at 5–7.)

   1.  A Preponderance of the Evidence Shows the Parents Did Receive a
     Copy of an IDEA NOPS

An IDEA NOPS "must be given to the parents [of a child with a

disability] only one time a school year." 34 C.F.R. § 300.504(a). Receipt of the

IDEA NOPS indicates the parent "knew or should have known" of the alleged

action that serves as the basis for the request for a hearing.  El Paso Ind. Sch. Dist.

v. Richard R.R., 567 F. Supp. 2d 918, 945 (W.D. Tex. 2008).

      At the hearing, Plaintiff's parents asserted that LISD failed to provide

them with the NOPS after their request for a special education evaluation of

Plaintiff in November 2017.  (Dkt. # 51-4 at 19.)  Instead, Plaintiff's parents claim

the first NOPs was not provided until February 2020.  (Dkt. # 51-5 at 395–96.)

Plaintiff's parents alleged this failure prevented Plaintiff from filing a request for

an impartial due process hearing before 2020.  (Id.)

      The SEHO found LISD did not provide a NOPS in 2017 but did

provide Plaintiff's parents with a copy of the NOPS on August 27, 2018.  (Dkt. #

51-4 at 11.)  The administrative record shows that Plaintiff's mother signed an

acknowledgment that she had received the NOPS on this date.  (AR 2256.)

Plaintiff's mother argues that she did not receive an IDEA NOPS at this August

2018 meeting, despite her signing paperwork to the contrary.  (Dkt. # 94 at 9.)  She

also asserts that no one attending the due process hearing testified to the contrary.

(Id.)  That said, Plaintiff's parents bear the burden of establishing a statute of

limitations exception applies.  The Court finds a preponderance of the evidence

establishes that Plaintiff's mother did receive an IDEA NOPS at the 2018 meeting.

Plaintiff's mother signed paperwork asserting as much, and her later testimony to the contrary without more is unconvincing.

Even if Plaintiff's mother's testimony alone were convincing, it's not clear that LISD failing to provide a NOPS in November 2017, when the parents first requested an evaluation, resulted in the parents failing to request a hearing any earlier. Parents ultimately retracted their request for Plaintiff to be evaluated in November 2017. Then, Plaintiff's parents did not request a hearing until March 2, 2020. This was nearly two years after receipt of the IDEA NOPS in 2018 and after the receipt of a second NOPS in the 2019–2020 school year.[2] The withholding statute of limitations exception does not apply.

 2. <u>A Preponderance of the Evidence Shows LISD Did Not Make Misrepresentations that Delayed Plaintiff's Parents from Asking for a Hearing</u>

Under the "specific misrepresentation" exception, the alleged misrepresentation must be "intentional or flagrant." <u>D.K. v. Abington Sch. Dist.,</u>

---

[2] Even if LISD had not provided a NOPS in August 2018, the withholding exception would not apply. Again, the withholding must cause a delay in a request for a hearing. Plaintiff's parents signed a second form confirming provision of NOPS on October 10, 2019. (Dkt. # 51-7 at 44.) Plaintiff admits, "the signature page for the NOPS … does bear the signature of A.W. on October 10, 2019." (Dkt. # 94 at 10, n.17.) Review of the page clearly shows Autumn William's signature with the date October 10, 2019. (Dkt. # 51-7 at 44.) Plaintiff's mother claims to have signed a form in error not once but twice, with only her testimony to refute the signed forms confirming NOPS receipt. The evidence shows Plaintiff's mother received NOPS in 2018 and 2019 and still failed to request a hearing until 2020.

696 F.3d 233, 245 (3d Cir. 2012).  A petitioner must establish that the school

district subjectively determined the student was not receiving a FAPE and

intentionally and knowingly misrepresented that fact to the student's parents.  Id.

The misrepresentation must have also prevented the parents from requesting a due

process hearing regarding claims that would otherwise be time-barred under the

statute.  Id.  Finally, the misrepresentation must also reflect the school district had

resolved the issues sparking the parents' complaint and request for a hearing.  C.H.

v. Northwest Ind. Sch. Dist., 815 F.Supp.2d 977, 984-85 (E.D. Tex. 2011).

        The record shows that LISD staff did misrepresent the law to

Plaintiff's parents when the parents were told that children with dyslexia could not

qualify for special education.  (CCAR 19–20.)  But this misrepresentation occurred

in January 2020.  LISD was already evaluating Plaintiff for special education at

that point, and Plaintiff began receiving special education services in February

2020.  The misrepresentation did not cause a delay in the parents requesting either

an evaluation or for requesting a due process hearing, which parents requested on

February 28, 2020.

        Parents argue that Ms. Howard's statement that she does not refer

kindergarten children to special education and Speegle's direction to ask for a

"dyslexia evaluation instead of telling the parents that they could re-ask for special

education evaluation on dyslexia in 208 instead of [Section] 504" were

misrepresentations.  (Dkt. # 94 at 11.)  Parents argue these misrepresentations
suggested to them that Plaintiff's problem was solved when it was not.  (Id.)  The
Court finds these statements do not rise to the level of intentional and flagrant
misrepresentations that Plaintiff did not qualify for special education services when
the district knew she did.

      First, Ms. Howard stated that she personally does not refer
kindergarten children to special education.  A teacher may express her professional
preferences to parents.  She did not state that the law does not permit dyslexic
children from being referred to special education or that kindergarten children are
not covered by the law.  She simply expressed that she does not refer kindergarten
children herself.  This statement did not misinform parents of the law or suggest
that Plaintiff's problems were solved.  At most, Ms. Howard expressed that she has
typically found it too early to determine whether problems exist in kindergarten
and prefers to allow teachers with fuller pictures of a child's education and needs
refer children in later grades as necessary.  A teacher saying she thinks referral is
too early is not a misrepresentation of the law or a statement that a problem is
fixed.  The misrepresentation exception applies when a district has determined a
child needs a FAPE and intentionally withholds that information from the parents.
Evan H. ex rel. Kosta H. v. Unionville–Chadds Ford Sch. Dist., No. 07–4990, 2008
WL 4791634, at *6 (E.D.Pa. Nov. 4, 2008) ("[T]o show a 'specific

misrepresentation,' Plaintiffs must establish not that the [school's] evaluations of the student's eligibility under IDEA were objectively incorrect, but instead that the [school] subjectively determined that the student was eligible for services under IDEA but intentionally misrepresented this fact to the parents.") Saying it is too early to determine whether a child needs special education is not an intentional withholding of information that the child needs a FAPE. Plaintiff's parents were free to adopt Ms. Howard's wait and see approach or request an evaluation at that time. The misrepresentation exception does not apply.

Speegle's statement is similar. Again, Speegle recommended that Plaintiff's parents ask for a dyslexia evaluation. This is distinct from a special education evaluation based on dyslexia. However, Speegle did not suggest to Plaintiff's parents that Plaintiff's problem was solved. Speegle suggested a dyslexia evaluation, clearing indicating Plaintiff may have an unresolved problem that needed addressing. Additionally, Speegle did not say that parents could not ask for a special education evaluation.[3] Rather, Speegle offered a professional

---

[3] Plaintiff's mother requested a special education evaluation for Plaintiff's sibling at the same time she requested a dyslexia evaluation for plaintiff. (AR 938.) Plaintiff's mother claims that she never realized the two processes were distinct. This is hard for the Court to credit, considering special education evaluation include receiving NOPS and ARD meetings, which dyslexia evaluations do not. Furthermore, Plaintiff's mother submitted a request for special education testing for Plaintiff the following school year, explaining that Plaintiff was "only tested last year for dyslexia." (AR 939.) This indicates Plaintiff's mother did understand the dyslexia evaluation was a cabined evaluation of "only" dyslexia.

opinion that dyslexia testing was proper for Plaintiff at that time.  There was no

misrepresentation of the law, and parents again were free to adopt Speegle's

recommendation or not.

      The only statement that rises to a misrepresentation occurred in 2020,

after Plaintiff was already under evaluation.  The SEHO correctly found the

misrepresentation exception did not apply.  Upon independent review of the record,

this Court agrees and affirms the SEHO determination.

    C.  Sufficiency of IEP/FAPE

      A school district has a duty to provide a FAPE to any children with

disabilities aged three to 21 within its jurisdiction.  §§ 300.101(a), 300.201; Tex.

Educ. Code § 29.001.  A FAPE is special education and related services that: 1) are

provided at public expense, 2) meet the standards of the relevant state education

agency, 3) include an appropriate school, and 4) are provided in conformity with an

IEP, as required by 20 U.S.C. §1414(d).  Endrew F. ex rel. Joseph F. v. Douglas

Cnty. Sch. Dist. RE-1, 137 S. Ct. 988, 999 (2017).  If a district does not provide a

sufficient IEP for a student, it cannot provide a sufficient FAPE.

    1.  LISD Provided a Sufficient IEP

      A school district must place in effect an individualized IEP for each

student each school year to provide a sufficient FAPE.  The IEP should be tailored

based on assessments and performance of the specific student.  It must include

descriptions of the related services, supplementary supports and services, instructional arrangements, program modifications, designated staff to provide the services, the duration and frequency of the services, and the location where the services will be provided.  34 C.F.R. §§ 300.22, 300.323(a).

The question for a school district is whether an IEP "was reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  Endrew F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S. Ct. 988 at 999 (2017).  A district must provide a student with an IEP that will provide meaningful educational benefit to the student and is likely to produce progress rather than only a trivial advancement or regression in skills.  Houston Ind. Sch. Dist. v. V.P. ex rel. Juan P., 582 F.3d 576, 583 (5th Cir. 2009).  To produce such an IEP, a district must consider a student's strengths, parental concerns about enhancing the student's education, the student's most recent evaluations, and the student's academic, developmental, and functional needs.  34 C.F.R. § 300.320(a)(1)(i).

Here, LISD provided Plaintiff's IEP in conformance with the IDEA's requirements.  The district considered Plaintiff's most recent evaluations, including Dr. Brown's evaluation and her psychiatrist's evaluation, to develop her IEP.  The district acknowledged the student's needs due to her ADHD and anxiety, and the IEP considered her dyslexia and difficulties with math.  The IEP therefore contemplated a program with three math goals, the provision of a dyslexia class in

a small setting, special education support for 30 minutes each day in math, and extra accommodations to meet the needs found by the District's FIE, Dr. Brown's evaluation, and Dr. Bunner's IEE.  In fact, the district added many accommodations in August 2020 to address Dr. Bunner's additional recommendations after initially developing the IEP in early 2020.

Plaintiff's parents argue that the district needed to provide education to Plaintiff at Rawson Saunders.  However, Dr. Bunner testified that she only recommended Rawson Saunders at the request of the parents. (AR 3744:18-20; 3744:24-25; 3745:1).  Dr. Bunner's original IEE simply noted that P.W. should "continue" dyslexia instruction. (AR 2125).  It was only on the "revised" evaluation, that Dr. Bunner recommended Rawson Saunders at parent request. (AR 1100).  Indeed, Dr. Bunner indicated that LISD could provide the necessary education.

Plaintiff's parents also point to the testimony of dyslexia trainer Nettles that it was critical for Plaintiff to be educated at Rawson Saunders.  (Dkt. #51-28 at 3567.)  However, Nettles is a dyslexia trainer from Rawson Saunders.  It is natural that she would believe Rawson Saunders would provide the best

education for Plaintiff.  The law requires the district to provide an IEP that is likely to allow Plaintiff to have progress, and they did so.[4]

All of Plaintiff's assertions regarding the quality of education at Rawson Saunders versus that provided by LISD fall prey to the same fatality. Rawson Saunders may have been best, but that does not mean the education provided by LISD was not good or sufficient.  For example, Plaintiff claims the February 2020 IEP provided no dyslexia services.  But the IEP offered 20 accommodations designed to address her dyslexia, including reading Plaintiff's work to her, access to audio books, and reading for all tests.  (Dkt. # 94 at 17.) These accommodations, along with a dyslexia class in a small setting, do address Plaintiff's dyslexia.

The preponderance of the evidence shows that the district used all the information available to develop an IEP that individualized to Plaintiff and was likely to allow her to make more than trivial education progress.  This is all that was required.

---

[4] Plaintiff's evaluations demonstrated that her greatest area of weakness was in math.  As a result, the IEP focused most closely on her math performance.  (AR 1768–1810.)  This was appropriate, not a defect as Plaintiff's parents seem to suggest by arguing the IEP ignored reading goals for math goals.  The math goals were the most urgent to address based on Plaintiff's individual strengths, assessments, and educational needs, so the IEP accommodated for that.

### 2.  LISD Provided a Sufficient FAPE

The Fifth Circuit has established a four-factor test to determine whether a FAPE has been provided.  Cypress-Fairbanks Ind. Sch. Dist. v. Michael F., 118 F. 3d 245, 253 (5th Cir. 1977).  Under the Michael F. factors, the Court must consider: 1) whether the program is individualized based on the student's assessment and performance; 2) whether the program is administered in the least restrictive environment; 3) whether the services are provided in a coordinated, collaborative manner by the key stakeholders; and 4) whether positive academic and non-academic benefits are demonstrated.  Id.

As discussed above, Plaintiff's proscribed program was individualized based on her assessments and performance, and the services were provided in a collaborative manner with the key stakeholders, with the district consulting Plaintiff's parents, her LISD teachers and staff, and her outside physicians and psychiatrist in ADR meetings throughout the development and later tailoring of Plaintiff's educational plan.  The Court next addresses whether the program was administered in the least restrictive environment and if positive academic and non-academic benefits were demonstrated.

### 1.  Plaintiff's Educational Services Were Provided in the Least Restrictive Environment

The IDEA requires that a student be educated in the least restrictive environment.  A court must consider whether the student can be satisfactorily

educated in general education settings with the use of supplemental aids and

services.  Daniel R.R. v. State Bd. Of Educ., 874 F. 2d 1036, 1048 (5th Cir. 1989).

If the student cannot be in general education settings, the Court then considers

whether the district mainstreamed the student to the fullest extent appropriate. Id.

      To determine whether a student can be educated in general education

settings, a court must examine: 1) the district's efforts to provide the student with

supplemental aids and services in the general education setting, 2) the district's

efforts to modify the general education curriculum to meet the student's individual

needs, 3) the education benefit a student is receiving while placed in the general

education setting, and 4) the impact the presence of the student with a disability

has on the general education setting and the education of the other students in the

setting.  Id.

      Plaintiff's parents argue the FAPE was deficient because the February

IEP lacked small classes.  (Dkt. # 94 at 18–19.)  Plaintiff cites several cases to

support her argument that smaller classes are needed.[5]  However, in each case, the

Plaintiffs proved that the student could not achieve academic or non-academic

progress in general education settings.  See e.g., J.H. v. Fort Bend Indep. Sch.

---

[5] Dkt. # 94 at 19 (citing Daniel R.R. v. State Board of Education, 874 F.2d 1036 at
1048 (5th Cir. 1989) (more restrictive setting needed); J.H. v. Fort Bend Indep.
Sch. Dist., 482 Fed. Appx. 915 (5th Cir. 2012) (child could not progress in general
education); H.W. v. Comal ISD, 32 F. 4th 454 (5th Cir. 2022) (child needed a more
specialized setting)).

Dist., 482 Fed. Appx. 915 (5th Cir. 2012) (finding child could not progress in general education setting).  Here, only Dr. Bunner's evaluation indicates that Plaintiff needed smaller classes.  And her evaluation does not say that Plaintiff could not progress in general education, only that smaller classes would be better. That Plaintiff has progressed in small classes at Rawson Saunders does not speak to whether she could advance in general education with accommodations and support at LISD.  And the IDEA prefers for students to be educated in general education settings, the least restrictive setting, with supports.  Rawson Saunders educates only students with dyslexia, which limits Plaintiff's access to her non-special education peers.  The IDEA prefers to avoid such restriction unless proven necessary for student progress, which is not established here.

LISD did not need to provide Plaintiff with her parent's or doctor's most perfect conception of an education setting.  The district needed to provide her with the least restrictive educational setting that would likely allow her to progress. The preponderance of the evidence reflects they did so.

2. Plaintiff's FAPE Was Reasonably Calculated to Achieve Academic and Non-Academic Benefits

Because of COVID, LISD did not get a chance to implement and fully observe how its IEP/FAPE would perform for Plaintiff.  After March 2020, Plaintiff's LISD school was forced to switch to a virtual school environment for

the rest of the school year due to the pandemic. Plaintiff then moved to Rawson Saunders for the 2020–2021 school year.

This leaves the Court in a difficult position to evaluate the academic and non-academic benefits of LISD's plan. And this factor may not be glossed over. Whether a student received academic and non-academic benefits is one of the most critical factors in determining whether a student received a sufficient FAPE. R.P. ex rel. R.P. v. Alamo Heights Indep. Sch. Dist., 703 F.3d 801, 812-13 (5th Cir. 2012). Yet the after-acquired evidence that Plaintiff's parents have provided the Court is far less useful than parents suggest. The question is not whether Rawson Saunders benefitted Plaintiff academically and non-academically. The question is also not whether the benefits from Rawson Saunders were greater than those provided by LISD's plan. The question is whether there were benefits from the LISD plan itself. The Court notes that all the data regarding Plaintiff's advancement at Rawson Saunders, while encouraging on a personal level, does not speak to what she could have achieved under the district's FAPE had she stayed at LISD.

The best this Court may do is assess the benefits of the FAPE in the time LISD had to implement it. Despite the school switching to a virtual format, Plaintiff demonstrated preliminary mastery of two of her three IEP math goals by the end of the 2020 school year. (AR 1056–57.) Keeping Plaintiff in general

education also benefitted her non-academically.  The record shows that Plaintiff had positive relationships with her teachers and with her peers, even making friends with her non-special education peers.  (AR 882-903; 4095:20-25; 4158:18-23; 4159:2-10; 3849:7-8.)  The preponderance of the evidence shows that the FAPE was reasonably calculated for Plaintiff to make real progress, academically and non-academically.

That Rawson Saunders may have supported Plaintiff to make potentially greater progress does not minimize the benefits Plaintiff realized under her FAPE at LISD.  In fact, Jennifer Sangave's declaration indicates that Rawson Saunders may not have even created the benefits Plaintiff's parents claim. Sangave's declaration compares Plaintiff's test results from February 5, 2020 to results from her May 23, 2022 test before Sangave.  (Dkt. # 73-2 at 555.)  The Court's review of the report finds that it does not show a lack of progress before Plaintiff's identification as a special education student or progress after Rawson Saunders.  Plaintiff's percentile ranking decreased from 2020 to 2022 in many test areas.  (See id.)  Educational progress is not always linear, even under the most perfect of educational plans.  LISD considered all the information available to it to design a FAPE that would allow Plaintiff to achieve meaningful progress when considering her individualized disabilities and needs.  This Court affirms the SEHO's decision that LISD offered Plaintiff a sufficient IEP/FAPE.

LISD accordingly need not compensate Plaintiff for the cost of
Rawson Saunders.  No evidence in the record demonstrates that Plaintiff was
unable to make progress at LISD under the IEP/FAPE designed for her.  If Plaintiff
had remained at LISD and failed to make academic progress, that would be a
failure to provide a FAPE.  Rawson Saunders providing benefits to Plaintiff reveals
nothing as to LISD's ability to induce progress.  That Plaintiff's parents want the
best possible educational services for their child is commendable.  At the same
time, it is not the responsibility of the district, or state, to pay for that education
under the IDEA, except under circumstances not present here.  The SEHO
fashioned remedies that properly accommodated for Plaintiff's damages, and this
Court affirms.

## III.    ADA/Section 504 Claims

Defendant moves for summary judgment on Plaintiff's ADA/Section
504 Claims.  (Dkt. # 74.)  Plaintiff asks the Court to deny this motion and allow the
claims to proceed to a jury trial.  (Dkt. # 79 at 20.)

Summary judgment is appropriate if the movant shows that there is
"no genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact
exists 'if the evidence is such that a reasonable jury could return a verdict for the
nonmoving party.'"  Bennett v. Hartford Ins. Co. of Midwest, 890 F.3d 597, 604

(5th Cir. 2018) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

   To establish a Section 504/ADA claim, a Plaintiff must prove "intentional discrimination against a student on the basis of his disability." <u>D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.</u>, 629 F.3d 450, 454–55 (5th Cir. 2010). "A plaintiff's mere disagreement with the correctness of the educational services rendered to him does not state a claim for disability discrimination." <u>R.B. v. North E. Indep. Sch. Dist.</u>, 2022 W.L. 488500 at *16 (W.D. Tex. San Antonio Div. 2022) (citing D.A., 629 F. 3d at 454-455). Intentional discrimination exists where the school's conduct "depart[s] grossly from accepted standards among educational professionals." <u>Ashley G. v. Copperas Cove Indep. Sch. Dist.</u>, No. 6:19-CV-00420-ADA-JCM, 2021 WL 1840910, at *4 (W.D. Tex. May 7, 2021), aff'd sub nom, <u>Ashley G. as Next Friend of M.G. v. Copperas Cove Indep. Sch. Dist.</u>, No. 21-50437, 2022 WL 797416 (5th Cir. Mar. 15, 2022) (quoting <u>D.A.</u>, 629 F.3d at 454-455). Accordingly, "facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or [the] ADA against a school district predicated on a disagreement over compliance with IDEA." <u>D.A.</u>, 629 F.3d at 455. Plaintiff must provide "independent factual allegation[s] that [school] officials acted with professional bad faith or gross misjudgment." <u>R.B.</u>, 2022 WL 488500, at *17.

A school is liable when its "continued use of ineffective or inadequate methods . . . becomes 'such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.'" M.J. v. Marion Indep. Sch. Dist., No. SA-10-CV-00978-DAE, 2013 WL 1882330, at *11 (W.D. Tex. May 3, 2013) (quoting Stewart v. Waco Indep. Sch. Dist., 711 F.3d 513, 526 (5th Cir. 2013), vacated and superseded on reh'g on other grounds, 599 Fed. Appx. 534 (5th Cir. 2013)).

Parents allege that LISD's delay in testing Plaintiff resulted in a departure from accepted professional judgment. Parents also allege that district staff, including Crawford and Plaintiff's teachers, consistently delayed addressing Plaintiff's disabilities in favor of a wait and see approach. (Dkt. # 94 at 5.) To support her allegation, Plaintiff submits the expert report of Dr. Jannette Hahn. (AE 603.) Dr. Hahn found LISD "did not comply with professional standards, did not evaluate for special education in a timely manner, did not provide the parent with the proper information regarding their rights, and did not have an understanding of the child find process across departments in the district." (Id.) Dr. Jennifer Freeman's deposition similarly provides evidence that LISD did not follow the normal timelines and procedures for referring students to special education. (AE 382–552.)

While the district staff's practices may not have arisen to the level to meet the misrepresentation exception to the statute of limitations for Plaintiff's IDEA claims, the Court finds a jury could reasonably conclude the district's actions were a gross departure from professional educational standards.  For example, while it was not a misrepresentation of the law for Plaintiff's kindergarten teacher to state that she never referred kindergarten students to special education, this practice could be a substantial departure from accepted professional practices in identifying and supporting children with disabilities.

Plaintiff alleges and produces evidence of more than a "[m]ere disagreement with the timing of the IDEA evaluation," as Defendant claims.  (Dkt. # 74 at 20.)  Contrary to Defendant's belief, there is a genuine dispute of material fact as to whether LISD's actions amount to "a 'gross departure from accepted standards among educational professionals' sufficient to maintain an ADA/§504 claim."  (Id. (citing D.A., 629 F.3d at 455.)  Plaintiff has submitted an expert report and Freeman's deposition sustaining as much, to which LISD has not responded. The Court **DENIES** Defendant's three paragraph Motion for Summary Judgment. (Dkt. # 74 at 19–20.)

CONCLUSION

Based on the reasoning above, the Court **DENIES** in part and **GRANTS** in part Plaintiff's Motion to Accept Additional Evidence.  (Dkt. # 73.)  The Court **AFFIRMS** all the SEHO's findings and thereby **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (Dkt. # 94) and **DENIES** in part and **GRANTS** in part Defendant's Motion for Judgment on the Administrative Record. (Dkt. # 74.)  The Court further **DENIES** Defendant's Motion for Summary Judgment.  (Dkt. # 74 at 19–20.)

**IT IS SO ORDERED.**

**Signed:** <u>March 26, 2024</u>

_____
David Alan Ezra
Senior United States District Judge